**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | |
| | | **Criminal No.: PWG-13-15** |
| TIFFANY RENEE EDMUNDSON, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

The Government filed a criminal complaint against Defendant Tiffany Renee Edmundson on July 30, 2012, alleging that she violated 18 U.S.C. § 1951(a) and 18 U.S.C. § 924(c), ECF No. 1, and she was detained by agreement on August 10, 2012, ECF No. 8.  Edmundson then was charged in a two-count Information with conspiracy to interfere with interstate commerce by robbery, in violation of 18 U.S.C. § 1951(a), and using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c), on January 14, 2013.  ECF No. 17.  At her February 11, 2013 arraignment on the Information, she entered a guilty plea on both counts, and she waived an indictment.  ECF Nos. 19, 20.

Edmundson entered into a Plea Agreement, ECF No. 21, with a Sealed Supplement, ECF No. 22, and sentencing originally was set for August 12, 2013, ECF No. 23.  After sentencing was rescheduled five times, Defendant filed a Motion to Dismiss Count Two and to Vacate Guilty Plea on Said Count, in light of *Johnson v. United States*, 576 U.S. ----, 135 S. Ct. 2551 (2015), which the Supreme Court decided after Defendant entered into the Plea Agreement, ECF No. 38, along with a Supplement, ECF No. 39.  In *Johnson*, the Supreme Court held that imposing an enhanced sentence under the Armed Career Criminal statute's residual clause, 18

U.S.C. § 924(e)(2)(B)(i), a statute similar to the § 924(c) residual clause, violated due process because it was impermissibly vague.  *See Johnson*, 135 S. Ct. at 2557.

I postponed the sentencing yet again, set a briefing schedule on the motion, ECF Nos. 40, 43, and held a hearing on the motion on December 17, 2015, ECF No. 60.  Edmundson withdrew her Motion to Vacate Guilty Plea on Count Two, I deferred my ruling on her Motion to Dismiss Count Two, and I found that the § 924(c) residual clause, 18 U.S.C. § 924(c)(3)(B), like that considered in *Johnson*, was unconstitutionally vague.  Dec. 30, 2015 Am. Mem. Op. 1, ECF No. 67 (amending Dec. 23, 2015 Mem. Op., ECF No. 64).  I ordered further briefing to address whether, even though Edmundson withdrew her motion to withdraw her plea of guilty to Count Two of the indictment, I had to dismiss that count because "there is no legally permissible ground for sentencing her under it."  *Id.*

In response, Defendant filed a Supplemental Motion to Dismiss Count Two, ECF No. 66. The Government then filed a Motion to Rescind Plea Agreement and Stay Briefing Schedule,[1] ECF No. 70, which Defendant opposed, ECF No. 74, and for which the Government filed a reply, ECF No. 77.  I issued a paperless order on April 7, 2016, observing that it appeared that neither the Government nor the Defendant disagreed with the fact that, as a consequence of my December 30, 2015 ruling as to Count Two, I cannot constitutionally sentence Ms. Edmundson for that count and it must be dismissed, notwithstanding the Government's Motion to Stay Briefing Schedule.  I directed any party that disagreed to provide me with a brief letter by April

---

[1] Although the Government moves to "rescind," what it actually seeks is *cancellation* of the Plea Agreement.  *See United States v. Scruggs*, 356 F.3d 539, 545 (4th Cir. 2004) ("'Rescission' now applies only to the abandonment of a contract by 'mutual consent.' In contrast, when . . . a 'party puts [or seeks to put] an end to the contract' because of the breach of the other party, the contract has ended [or would end] by 'cancellation.' Upon cancellation, the cancelling party retains not only "any right based on prior breach or performance" but also "any remedy for breach of the whole contract or any unperformed balance." (quoting U.C.C. §§ 2-106(3)–(4), 2-209 cmt. 3 (1989); citing Restatement § 283 & cmt. a)).

19, 2016 with authority for why Count Two should not be dismissed. ECF No. 80. Neither party responded.

I held a hearing on the parties' motions on June 15, 2016 and denied the Government's Motion, granted Defendant's Supplemental Motion, and dismissed Count Two. ECF Nos. 83, 87.[2] This Memorandum Opinion memorializes the rulings made at the motions hearing.

## The Plea Agreement

The starting point for my analysis is the Plea Agreement itself. This is not a Rule 11(c)(1)(C) plea, and therefore the Court is not a party to the Plea Agreement and did not bind itself to accept any portion of it. Plea Agr. ¶ 14. As noted, Edmundson pleaded guilty to conspiracy to interfere with interstate commerce by robbery, in violation of 18 U.S.C. § 1951(a), and using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). Plea Agr. ¶ 1. My December 2015 decision determined that "Edmundson's plea to conspiracy to commit Hobbs Act robbery did not meet the requirements in 18 U.S.C. § 924(c)(3)(A) and that 18 U.S.C. § 924(c)(3)(B) is void for vagueness." Am. Mem. Op. 1.

Edmundson's waiver of rights appears on pages 2–4 of the Plea Agreement. Plea Agr. ¶ 4. Among the rights that Edmundson waived was the right to appeal, with certain limitations. *Id.* ¶ 4(f), 12. Defendant "reserve[d] the right to appeal from any sentence above the advisory guidelines range resulting from a final offense level of 19 for Count One plus a consecutive sentence of seven years for Count Two," and the Government "reserve[d] the right to appeal from any sentence below the advisory guidelines range resulting from a final offense level of 19 for Count One plus a consecutive sentence of seven years for Count Two." *Id.* ¶ 12(b).

---

[2] My ruling mooted Defendant's earlier Motion to Dismiss, ECF No. 38, and Supplement, ECF No. 39. ECF Nos. 85, 86.

Additionally, both parties reserved the right to "appeal[] from any decision [under Fed. R. Crim. Proc. 35(a), should a sentence be imposed that resulted from arithmetical, technical, or *other clear error*." *Id.* ¶ 12(c) (emphasis added).

The Plea Agreement includes a Factual and Advisory Guidelines Stipulation, *id.* ¶¶ 6–8, in which the parties noted that, by virtue of Defendant's guilty plea on the § 924(c) charge, there would be "no enhancement for brandishing the firearm, pursuant to U.S.S.G § 2K2.4, comment[] n.(2(B)(4))," because that would be double counting, *id.* ¶ 6(b). Of course, if Count Two no longer is an offense for which Defendant will be sentenced, then there should be an enhancement to the guidelines offense calculation for Count One under § 2K2.4. *See* U.S.S.G § 2K2.4. The Plea Agreement stated that, for Count Two, "the minimum term of imprisonment is seven years, to be imposed consecutive to the sentence for Count One, because a firearm was brandished." Plea Agr. ¶ 6(d).

In the section entitled "Obligations of the United States Attorney's Office," the Plea Agreement obligated that office to "recommend a sentence within the applicable guidelines range for Count One, plus a consecutive seven-year sentence for Count Two." *Id.* ¶ 9. Yet, both parties "reserve[d] the right to bring to the Court's attention at the time of sentencing . . . *all relevant information* concerning the Defendant's background, character and conduct, including the conduct that is the subject of the counts of the Indictment that [the U.S. Attorney's] Office has agreed to dismiss at sentencing,"[3] and it notes that the Court may consider all such information when arriving at a sentence. *Id.* ¶ 10 (emphasis added).

---

[3] The Government only charged Edmundson with the two counts that are the subject of the Plea Agreement. However, based on the indictments of her co-conspirators, it is clear that she could have been charged with many more offenses. *See* Second Superseding Indictment, ECF No. 44 in *United States v. Morris*, PWG-13-445 (D. Md.).

Paragraph 13 relieves the Government of its obligations if the Defendant "engages in conduct … which would justify a finding of obstruction of justice" or "fails to accept personal responsibility for her conduct by failing to acknowledge her guilt . . ." or violates any federal, state or local law, or "withdraw[s] her guilty plea." *Id.* ¶ 13.

The Sealed Supplement[4] accompanying the Plea Agreement contains a cooperation agreement that requires the Defendant to cooperate by "fully and truthfully respond[ing] to all questions" from federal law enforcement officers, "fully and truthfully disclos[ing] all [relevant] information," turning over relevant documents and tangible evidence, "act[ing] in an undercover capacity," testifying before grand juries and in court proceedings, and not committing any further offenses. Sealed Supp. ¶ 1. Edmundson also agreed to "bring to [the U.S. Attorney's] Office's attention all crimes which she has committed." *Id.* ¶ 1(e).

The Government agreed to inform the Probation Office and the Court of Defendant's cooperation and "all other information … relevant to sentencing, including the conduct that is the subject of any counts of the Indictment that [the U.S. Attorney's] Office has agreed to dismiss at sentencing." *Id.* ¶ 3. The Government also obligated itself, in its "sole discretion," to make a § 5K1.1 motion "requesting a downward departure of up to 4 levels with respect to the sentencing guidelines range for Count One," *if* Defendant "provided substantial assistance" and "fully complied with all of her obligations under her plea agreement and th[e] Sealed Supplement." *Id.* ¶ 4. The Sealed Supplement noted that "Defendant is not bound by the departure level recommended by [the U.S. Attorney's] Office." *Id.* It stated that the Government

---

[4] The cooperation agreement in the Sealed Supplement required Edmundson to testify at the trial of her co-defendants if asked to do so by the Government. This she did, during which the details of her cooperation were made public. Because her cooperation already is a matter of public record, I will make reference to it without sealing that portion discussing her cooperation.

would "recommend a sentence within the applicable guidelines range for Count One and a sentence of seven years imprisonment for Count Two." *Id.* ¶ 5. Additionally, the Government agreed to "provide information to the State's Attorney's Office for Prince George's County" regarding Defendant's cooperation, as Defendant had "a pending probation violation proceeding in the Circuit Court for Prince George's County, Maryland." *Id.* ¶ 6.

In the event that Defendant breached the Sealed Supplement by "commit[ting] any further crimes, … knowingly [withholding] information; giv[ing] false, incomplete, or misleading testimony or information," "fail[ing] to accept personal responsibility for her conduct" or "otherwise fail[ing] in any way to fulfill completely each and every one of her obligations under [the Sealed Supplement]," the Government would "be released from its obligations" and could "recommend any sentence that [it] considers appropriate, up to and including the maximum possible sentence." *Id.* ¶ 7. It also could prosecute Defendant "for any federal criminal violation of which [the U.S. Attorney's] Office has knowledge, including . . . the offenses charged in the other counts of the Indictment that would otherwise have been dismissed at sentencing." *Id.*

## **Whether to Cancel the Plea Agreement**

The Government asserts two grounds for cancellation, based on its view that "[p]lea agreements are governed by contract law": Defendant's breach and mutual mistake. Gov. Mot. 3 & 9–10 n.6. It is true that, "[a]lthough the analogy may not hold in all respects, plea bargains are *essentially* contracts." *Puckett v. United States*, 556 U.S. 129, 137 (2009) (citing *Mabry v. Johnson*, 467 U.S. 504, 508 (1984) (emphasis added)); *see United States v. Davis*, 689 F.3d 349, 353 (4th Cir. 2012) ("A plea agreement is '*essentially* a contract between an accused and the government' and is therefore subject to interpretation under the principles of contract law."

(quoting *United States v. Lewis*, 633 F.3d 262, 269 (4th Cir. 2011)) (emphasis added)); *United States v. Peglera*, 33 F.3d 412, 413-14 (4th Cir. 1994) ("It is well-established that the interpretation of plea agreements is rooted in contract law . . . ."); *United States v. Wade*, 936 F.2d 169, 173 (4th Cir. 1991) ("When a defendant is able to negotiate a plea agreement that includes the government's agreement to file a motion for a downward departure under § 5K1.1, the defendant obtains rights to require the government to fulfill its promise. To those circumstances we apply the general law of contracts to determine whether the government has breached the agreement."), *aff'd*, 504 U.S. 181 (U.S. 1992).  In the Fourth Circuit, "normal contract principles" apply to plea agreements "where the contested issues involve the content of the agreement or the authority of the parties to enter into the agreement." *Plaster v. United States*, 720 F.2d 340, 352 (4th Cir. 1983) (citing *United States v. McIntosh,* 612 F.2d 835 (4th Cir.1979)); *see United States v. McIntosh*, 612 F.2d 835, 837 (4th Cir. 1979) (same).

But, as noted, "the analogy may not hold in all respects," *Puckett*, 556 U.S. at 137, as "[a]nalogies to contract law in this setting are not perfect."  *United States v. Transfiguracion*, 442 F.3d 1222, 1230 (9th Cir. 2006) (quoting *United States v. Zweber*, 913 F.2d 705, 711 (9th Cir. 1990), *superseded by amendment to USSG on other grounds, as recognized in United States v. Webster*, 996 F.2d 209, 211 (9th Cir. 1993)).  Relevantly, the Fourth Circuit has observed that "principles of contract law, which implicate entirely different concerns of economic efficiency in a situation involving equally strong parties, may not properly be applicable to the prosecutor-defendant agreement context" in all instances.  *Plaster*, 720 F.2d at 352.  The *Plaster* Court observed that, in *Cooper v. United States,* 594 F.2d 12 (4th Cir. 1979), it had enforced a plea agreement under "principles of fundamental fairness," even though it had not "been accepted under principles of contract law."  720 F.2d at 352; *see McIntosh*, 612 F.2d at 837 ("[W]here . . .

some technical rule works directly to impair a defendant's personal acceptance of an offer and deny a substantial right such as effective assistance of counsel, we will distinguish the application of such rules to the facts before us."). Insofar as contract principles do apply, the court's "analysis of the plea agreement or breach thereof is conducted with *greater scrutiny* than in a commercial contract," due to the implication of the "'defendant's fundamental and constitutional rights . . . when he is induced to plead guilty by reason of a plea agreement.'" *United States v. Lewis*, 633 F.3d 262, 269 (4th Cir. 2011) (quoting *United States v. McQueen,* 108 F.3d 64, 66 (4th Cir. 1996) (emphasis added)).

Thus, I first will consider whether Defendant breached the Plea Agreement, and then I will consider whether the parties entered into the agreement based on a mutual mistake. But, ultimately, while informed by this contractual analysis, I will decide whether to cancel the Plea Agreement based on principles of fundamental fairness.

<u>Breach</u>

Under basic contract principles, material breach is grounds for cancelling an agreement. *See Scruggs*, 356 F.3d at545–46. Thus, the issue is whether Defendant committed a material breach by moving to dismiss Count Two. Defendant waived various rights in the Plea Agreement, including "the right to a speedy jury trial with the close assistance of competent counsel," "the right to confront and cross-examine the government's witnesses," "the right to testify in her own defense," the right to refuse to testify," and "the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence." *See* Plea Agr. 2–4. She waived her rights to appeal, including specifically her right to appeal her conviction and "whatever sentence is imposed," except she explicitly did not waive her "right to appeal from any sentence above the advisory guidelines range resulting from a final offense level of **19** for

Count One plus a consecutive sentence of seven years for Count Two." *Id.* at 6.  And she explicitly did not waive her right to move to correct or amend her sentence if it resulted from clear error, or to appeal a sentence resulting from clear error. *Id.*  Notably, Defendant did not waive the right to file a motion to dismiss to challenge the Court's jurisdiction to convict or sentence her under the terms of the Plea Agreement.  This suggests that she retained her right to file such a motion and did not breach the agreement by moving to dismiss on this ground. *See United States v. Williams*, 811 F.3d 621, 624 (4th Cir. 2016) (concluding that a statute that "specifically prohibits appeals" under two paragraphs of a subsection, allows appeals under another paragraph "[b]y clear implication"; noting that in *POM Wonderful LLC v. Coca–Cola Co.*, --- U.S. ----, 134 S. Ct. 2228, 2238 (2014), the Supreme Court "appl[ied] the principle of *expressio unius est exclusio alterius* to conclude that Congress's express preclusion of some legal provisions indicates an intention to preserve others").

Moreover, this is an instance where contract law is not a perfect analogy, as Defendant can challenge jurisdictional defects (such as by alleging, as Defendant does, that the Court lacks jurisdiction over the conduct described in Count Two because it does not constitute a federal crime), notwithstanding any waiver provisions in the Plea Agreement. *See United States v. Crawford*, 213 F.3d 633 (4th Cir. 2000) (concluding that defendant had not waived through his plea agreement his claim that trial court lacked jurisdiction to convict him, because "[a]ppellate review of proper subject matter jurisdiction cannot be waived by the litigants") (citing *United States v. Griffin,* 303 U.S. 226, 229 (1938)); *United States v. Runnells*, 873 F.2d 1441, 1989 WL 37430, at *1 (4th Cir. 1989) (Table) (defendant who enters into a guilty plea that is not conditional "'waives all challenges to the prosecution *except those going to the court's jurisdiction*'" (quoting *Hayle v. United States*, 815 F.2d 879, 881 (2d Cir. 1987) (emphasis

added)).  Indeed, "[w]here the State is precluded by the United States Constitution from haling a defendant into court on a charge, federal law requires that a conviction on that charge be set aside even if the conviction was entered pursuant to a counseled plea of guilty."  *Menna v. New York*, 423 U.S. 61, 62 (1975) (citing *Blackledge v. Perry*, 417 U.S. 21, 30 (1974)).

Additionally, while Defendant explicitly waived a specified constellation of rights, she did not explicitly waive her right to file a motion to dismiss to challenge the Court's ability to sentence her on a charge that "judged on its face . . . is one [that] the State may not constitutionally prosecute."  *Menna*, 423 U.S. at 62 n.2; *United States v. Broce*, 488 U.S. 563, 575 (1989) (quoting *Menna*).  Again, this suggests that she retained her right to file such a motion and did not breach the agreement by moving to dismiss on this ground either.  *See Williams*, 811 F.3d at 624.  And, if "the claim is that the State may not convict petitioner no matter how validly his factual guilt is established," then "[t]he guilty plea … does not bar the claim."  *Menna*, 423 U.S. at 62 n.2 (differentiating these circumstances from when "factual guilt is a sufficient basis for the State's imposition of punishment" and the guilty plea "renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction if factual guilt is validly established"); *see United States v. Wiggins*, 905 F.2d 51, 52 (4th Cir. 1990) (noting that "[a] defendant who enters a guilty plea waives the right to raise a constitutional challenge to his or her conviction, except in narrow circumstances," such as "on double jeopardy grounds [and] where 'the claim is that the State may not convict petitioner no matter how validly his factual guilt is established'" (quoting *Menna*, 423 U.S. at 62 n.2)).

Thus, Defendant did not waive her right to move to dismiss Count Two on the basis of *Johnson v. United States*, 576 U.S. ----, 135 S. Ct. 2551 (2015), as a change of law that prevented

her conviction on that count, regardless of factual guilt, or on the ground that the Court lacks jurisdiction to sentence her on that count.  Consequently, she did not materially breach the Plea Agreement by filing her Motion to Dismiss.  Therefore, material breach is not a basis for cancelling the Plea Agreement.

<u>Mutual Mistake</u>

The Government alternatively argues that "this Court should rescind [i.e., cancel] the plea agreement based on the parties' mutual mistake as to the legal viability of Count Two,[5] a circumstance that arose after the parties executed the Plea Agreement, and after the Defendant entered her pleas of guilty."  Gov. Mot. 3.  "In general, if there is a mutual mistake 'as to a basic assumption on which the contract was made,' the adversely affected party may seek to avoid the contract." *Kansas v. Nebraska*, 135 S. Ct. 1042, 1072 (2015) (Thomas, J., concurring in part and dissenting in part) (quoting Restatement (Second) of Contracts § 152, at 385).    Indeed, "[c]ancellation is an appropriate remedy, where . . . the parties can be restored to substantially their original positions."  *Smith v. Bounds Package Corp.*, 110 A.2d 71, 73 (Md. 1954); *see Rojas v. State*, 450 A.2d 490, 494 (Md. Ct. Spec. App. 1982) (stating that the "fairest remedy" for mistake of law in reaching plea agreement "is to rescind the entire plea agreement" and thereby "place[] the parties in their original positions").[6]  Conversely, cancellation may not be appropriate if the *status quo ante* cannot be attained, such as if a cooperating defendant already

---

[5] What is at issue is an alleged mistake of law, as opposed to a mistake of fact.  *See* Black's Law Dictionary 1017 (7th ed. 1999) (defining mistake of fact as "[a] mistake about a fact that is material to a transaction" and mistake of law as "[a] mistake about the legal effect of a known fact or situation").

[6] Under the rule of *locus contractus*, which Maryland follows, if the parties sign a contract in Maryland, Maryland contract law applies.  *Hsue Tung v. Peters*, No. AW-09-576, 2009 WL 5206627, at *3 (D. Md. Dec. 23, 2009) (citing *Md. Cas. Co. v. Armco, Inc.,* 643 F. Supp. 430, 431 (D. Md. 1986)).  The parties agree that Maryland common law on contracts provides guidance.

provided testimony.  *See State v. Parker*, 640 A.2d 1104, 1119 (Md. 1994) (concluding that court-ordered cancellation of an unenforceable plea agreement was not a "practical and fair solution," given that it would not "return the parties to their original positions because [the defendant] ha[d] already provided information, testified, and served eleven years of his sentence"; ordering trial court to let defendant chose between leaving guilty plea in place or withdrawing it, with the consequences attendant to each choice).

Further, under Fourth Circuit law, a mutual mistake of law underlying a plea agreement, resulting from a subsequent interpretation of the law, is not necessarily grounds for cancellation of the agreement because "'[a] plea agreement, like any contract, allocates risk,'" and "'the possibility of a favorable change in the law occurring after a plea is one of the normal risks that accompan[ies] a guilty plea.'"  *United States v. Archie*, 771 F.3d 217, 222 (4th Cir. 2014) (quoting *United States v. Johnson,* 410 F.3d 137, 153 (4th Cir. 2005); *United States v. Sahlin,* 399 F.3d 27, 31 (1st Cir. 2005)), *cert. denied*, 135 S. Ct. 1579 (2015).  Consequently, "a party [to a plea agreement] '"cannot . . . ask to re-bargain the waiver of his right because of changes in the law."'"  *Archie*, 771 F.3d at 222; *see United States v. Bradley*, 400 F.3d 459, 463-64 (6th Cir. 2005) ("[C]hanges in the law generally do not permit either the government or a criminal defendant to renege on a plea agreement . . . .").[7]

But, in *Archie*, 771 F.3d at 221–22, the change in law affected only the possible penalty and not the elements of the offense.  In contrast, where the change in law affects the defendant's

---

[7] Lest it appear that Defendant could renege by moving to dismiss Count Two, while the Government cannot renege by cancelling the Plea Agreement, Defendant had not waived her right to move to dismiss the charges against her, while the Government had waived its right to prosecute her for the grounds it agreed to dismiss in exchange for her performance under the agreement.  Thus, Defendant was not trying to "re-bargain" a right she waived in the Plea Agreement.  *See Archie*, 771 F.3d at 222.

understanding of the elements of an offense to which he or she is pleading guilty and consequently prevents the defendant from knowingly and voluntarily waiving his or her rights in the agreement, the plea as to that offense may not stand. *See United States v. Johnson*, 410 F.3d 137 (4th Cir. 2005) (unrelated to the Supreme Court's 2015 *Johnson* decision). In *Johnson*, 410 F.3d 137, the defendant pleaded guilty "to possession of a firearm by a convicted felon and operation of a motor vehicle while under the influence of drugs" and waived his right to appeal, in exchange for the Government agreeing to dismiss a third count for possession of marijuana and to recommend concurrent sentences. *Id.* at 140, 143. The trial court sentenced him "[c]onsistent with the then mandatory United States Sentencing Guidelines [U.S.S.G]." *Id.* at 143. The Supreme Court then decided *United States v. Booker*, 543 U.S. 220 (2005), changing the sentencing guidelines from mandatory to simply advisory. *Johnson*, 410 F.3d at 143, 149.

Following *Booker*, Johnson challenged his sentence, arguing in part that, despite the Rule 11 plea colloquy in which he said that he "understood that he would be sentenced under the Guidelines," his appeal waiver was not knowing and intelligent because he pleaded at a time that "'[n]either the [c]ourt, the Government, [n]or [he had] anticipated or had basis to anticipate' that the Supreme Court would subsequently hold the Guidelines advisory rather than mandatory." *Id.* at 150, 152 (quoting Br.). As noted, the Fourth Circuit observed that "[a] plea agreement, like any contract, allocates risk. 'And the possibility of a favorable change in the law occurring after a plea is one of the normal risks that accompan[ies] a guilty plea." *Id.* at 153 (citations omitted). On that basis, the court upheld Johnson's guilty plea and sentence, despite *Booker* and the resultant change in law. *Id.* at 143, 149, 152. Thus, *Johnson*, like *Archie*, involved a change in the law with regard to penalties.

13

Yet, in *Johnson*, the Fourth Circuit considered the impact of a change in the law on a plea agreement more broadly and noted that an appeal waiver "has no binding effect if the defendant did not enter into it knowingly and voluntarily." *Id.* at 151. Indeed, "[t]he Supreme Court has recognized that a defendant cannot be said to have intelligently entered a guilty plea if 'neither he, nor his counsel, nor the court correctly understood the *essential elements of the crime*,' as those elements were interpreted by the Supreme Court *after* entry of the plea." *Id.* at 152 (quoting *Bousley v. United States*, 523 U.S. 614, 618–19 (1998) (first emphasis in *Johnson*; second emphasis added)). Under those circumstances, the court could not have advised the defendant adequately of the elements of the offense to which he pleaded guilty because the change in the law addressed whether the conduct admitted to by the defendant during the plea constituted a crime at all. *See id.* The Fourth Circuit differentiated the facts before it, holding that when it is the penalties, as opposed to the elements, that change, "post-plea legal changes to [those] penalties do not provide a basis for upsetting a guilty plea." *Id.* at 152. Thus, the rationale that the plea could not be deemed knowing and voluntary did not apply because Johnson *did* understand the elements of the crime, just not the extent of the consequences. *Id.*

*Bousley v. United States*, 523 U.S. 614 (1998), further underscores the notion that a change in the law as to the *elements* of an offense after entry of a plea agreement can render the plea involuntary because then the judge could not have advised the defendant adequately of the elements of the offense to which the defendant entered the plea. In *Bousley*, under analogous circumstances to this case, the defendant pleaded guilty to "possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1)," and "'using' a firearm [during and in relation to a drug trafficking crime,] in violation of 18 U.S.C. § 924(c)(1)." *Id.* at 616. The trial court accepted his plea as competently entered and voluntary, and it sentenced him to "78

months' imprisonment on the drug count," followed by "a consecutive term of 60 months' imprisonment on the § 924(c) count." *Id.* at 616–17.  He later filed an 18 U.S.C. § 2255 motion, collaterally attacking his sentence based on the Supreme Court's holding in *Bailey v. United States*, 516 U.S. 137, 144 (1995), that "§ 924(c)(1)'s 'use' prong requires the Government to show 'active employment of the firearm.'"  *Id.*  The Supreme Court observed that, as it held in *Brady v. United States*, 397 U.S. 742, 748 (1970), "[a] plea of guilty is constitutionally valid only to the extent it is 'voluntary' and 'intelligent,'" and "a plea does not qualify as intelligent unless a criminal defendant first receives 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'" *Bousley*, 523 U.S. at 618 (quoting *Brady*; *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)).  While not reaching the merits because defendant procedurally defaulted, the Court noted that, if defendant proved his contention that "neither he, nor his counsel, nor the court correctly understood the essential elements of the crime with which he was charged," his plea would be constitutionally invalid. *Id.* at 618–19.

Here, based on the Supreme Court's 2015 *Johnson* decision, 135 S. Ct. 2551, and my ruling in December 2015 that "Edmundson's plea to Hobbs Act Conspiracy did not meet the § 924(c) force clause [§ 924(c)(3)(A)] and that the § 924(c) residual clause [§ 924(c)(3)(B)] is void for vagueness under *Johnson*," Am. Mem. Op. 2, Defendant could not be found guilty of a § 924(c) crime of violence based on the predicate offense of conspiracy to commit Hobbs Act robbery.  This change in the law brought about by *Johnson*, two years after the Plea Agreement but before sentencing, makes it clear that there was a mutual mistake of law: Defendant, Defense counsel, the Court and the Government could not have understood the elements of the § 924(c) charge correctly two years earlier.  Notably, insofar as the Supreme Court held in *Teague v.*

*Lane*, 489 U.S. 288, 310 (1989), that "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced," the change in the law at issue here occurred before the sentencing, before the case became final.  In any event, "*Teague* by its terms applies only to procedural rules" and, as in *Bousley*, "it is inapplicable to the situation [before me] in which [the Supreme] Court [has] decide[d] the meaning of a criminal statute enacted by Congress," and I have applied that meaning to an analogous statute.  *See Bousley*, 523 U.S. at 620.  Therefore, I cannot in retrospect conclude that Edmundson knowingly, intelligently, and voluntarily decided to plead guilty to Count Two after being fully apprised of the law in terms of the elements the Government would have to prove for her to be found guilty.  *See id.* at 618–19; *Johnson*, 410 F.3d at 151–52.  Given that Edmundson was misinformed about the elements of the charge, rather than the possible penalties, the plea was constitutionally invalid.  *See Johnson*, 410 F.3d at 151–52.[8]  Thus, the plea as to Count Two must be stricken.  *See id.*; *Bousley*, 523 U.S. at 618–19.

<u>Fundamental Fairness</u>

This constitutionally invalid plea as to Count Two does not, however, mean that the Plea Agreement in its entirety must be cancelled, despite the mutual mistake of law underlying it.  As noted, I must consider Edmundson's "'fundamental and constitutional rights,'" *Lewis*, 633 F.3d at 269 (quoting *McQueen,* 108 F.3d at 66), as the agreement may involve "principles of fundamental fairness" that contract law cannot address adequately, *see Plaster*, 720 F.2d at 352.  Significantly, Edmundson simply cannot be returned to her original position, as she already used her biggest bargaining chip by providing testimony against her co-conspirators as the first

---

[8] Although the result may have been different if *Johnson*, 135 S. Ct. 2551, only applied prospectively, but in *Welch v. United States*, --- U.S. ----, 136 S. Ct. 1257, 1265 (2016), the Supreme Court held that *Johnson* "is . . . a substantive decision and so has retroactive effect."

cooperator pursuant to the Plea Agreement, and in doing so she has exposed herself to risk and lost her ability to negotiate a comparable plea agreement in lieu of the existing agreement. This means that she no longer can be given the opportunity of a U.S.S.G. § 5K1.1 reduction for cooperation. And, the Government already has received the benefit of the bargain in the form of Edmundson's testimony, which gave it leverage and aided it in obtaining three other convictions of Edmundson's co-defendants—one at trial, resulting in a forty-two-year sentence, and two pleas, one from the mastermind behind the conspiracy. Thus, it would "frustrate the purpose underlying [the] contract[]" to deprive Edmundson of the benefit of her bargain. *See Archie*, 771 F.3d at 222. Moreover, it would be fundamentally unfair for Edmundson not to receive the benefit of her bargain under these circumstances, especially given that her required disclosure of "all crimes which she has committed," Sealed Supp. ¶ 1(e), and the testimony she provided now can be used against her and subject her to additional charges and a much greater sentence. *See Plaster*, 720 F.2d at 352. Although I have no reason to believe that the Government would be vindictive, cancelling the Plea Agreement would expose Edmundson to the possibility of additional charges and prosecution for an incalculably more serious offense—a second gun charge—and a possible twenty-five year sentence, to run consecutively, on that charge. Therefore, cancellation of the Plea Agreement would not be an appropriate remedy, as it would be fundamentally unfair. *See Parker*, 640 A.2d at 1119; *Plaster*, 720 F.2d at 352.

This outcome is supported by the Ninth Circuit's helpful analysis of these issues in the context of similar facts in *United States v. Transfiguracion*, 442 F.3d 1222 (9th Cir. 2006), *United States v. Barron*, 172 F.3d 1153 (9th Cir. 1999), and *United States v. Sandoval-Lopez*, 122 F.3d 797, 800–01 (9th Cir. 1997). In *Transfiguracion*, defendants Transfiguracion and Dao entered into plea agreements in which they agreed to plead guilty to conspiracy to import

narcotics, based on the importation of narcotics from California to Guam, and the Government agreed to dismiss other charges against them, in exchange for their pleas and their cooperation in the investigation and prosecution of their co-conspirators. *Id.* at 1224–26. The defendants "agree[d] to waive any right to appeal or to collaterally attack this conviction," but "reserve[d] the right to appeal the sentence actually imposed." *Id.* at 1226. They pleaded guilty and cooperated, as agreed. *Id.*

Then, before they were sentenced, the Ninth Circuit "threw a wrench in the works" by holding in another case that "the facts that had formed the predicate of Transfiguracion's and Dao's contracted-for guilty pleas no longer constituted a crime." *Id.* On that basis, the defendants "moved to dismiss the importation informations filed against them, while "not seek[ing] to withdraw their guilty pleas to those charges." *Id.* The Government agreed to the dismissal but argued "that the parties' mutual mistake of law as to the factual basis of the importation charge justified rescission of the defendants' plea agreements." *Id.* at 1226–27. The district court rejected the Government's argument and granted the defendants' motion to dismiss. *Id.* at 1227. On appeal, the Ninth Circuit affirmed, noting that it had "rejected substantially the same mutual mistake argument in *Barron*, 172 F.3d at 1158–59."

In *Barron*, after the defendant pleaded guilty to an offense and was sentenced, the Supreme Court *Bailey v. United States*, 516 U.S. 137 (1995), which rendered Barron's conviction invalid based on the facts pleaded, because they no longer constituted a crime. *Transfiguracion*, 442 F.3d at 1228–29 (discussing *Barron*). Barron filed a § 2255 motion to set aside his conviction and sentence, and the district court granted the motion but required the withdrawal of his plea agreement. *Id.* at 1229. The Ninth Circuit held that "although Barron's

conviction had to be set aside, his § 2255 motion had done nothing 'to breach nor repudiate the agreement,' and accordingly, the agreement remained in force." *Id.*

The court reasoned that, even though the Ninth Circuit's "typical practice" was to "constru[e] plea agreements according to traditional principles of contract law," such that "a mutual mistake of law *could* invalidate the bargain struck by the defendant and the government in a plea agreement," mutual mistake was not a basis for cancellation, because "it would be inappropriate to extend the application of ordinary contract law principles so far as to permit the government to claim the defense of mutual mistake." *Id.* The *Barron* Court observed:

> A plea bargain is not a commercial exchange. It is an instrument for the enforcement of the criminal law. What is at stake for the defendant is his liberty.... What is at stake for the government is its interest in securing just punishment for violation of the law and its interest that an innocent act not be punished at all. The interests at stake and the judicial context in which they are weighed require that something more than contract law be applied.

*Barron*, 172 F.3d at 1158 (quoted in *Transfiguracion*, 442 F.3d at 1229). It noted that "the defendant '[could] never be returned to his "original position."'" *Transfiguracion*, 442 F.3d at 1229.

Consistent with its earlier decision in *Barron*, the *Transfiguracion* Court concluded that a mutual mistake of law "cannot void an otherwise valid plea agreement." *Id.* at 1230. It reasoned that "[t]he nature of a plea agreement is simply too complex to support the doctrine of mutual mistake," given that "the liberty of Transfiguracion and Dao [was] at stake and their cooperation . . . already occurred." *Id.* Like Barron, Transfiguracion and Dao could not "be restored to their original positions because they cooperated with the government in reliance on their plea agreements, providing information pertinent to their prosecution on the additional . . . charges contained in the indictment." *Id.* at 1229 n.9.

The Ninth Circuit also rejected the argument that, because the defendants moved to dismiss and their convictions were voided, the guilty pleas were vacated and the Government could prosecute the defendants on the charges it had agreed to dismiss.  *Id.* at 1230.  It observed that, in *Barron*, it had held that "a claim that a conviction is invalid because the underlying acts do not constitute a crime 'did not attack the plea agreement in any way.'"  *Id.*  It also relied on its earlier decision in *United States v. Sandoval-Lopez*, 122 F.3d 797, 800–01 (9th Cir. 1997).

In *Sandoval-Lopez*, the defendants also entered guilty pleas and then moved to set aside their convictions pursuant to § 2255 following *Bailey*, which rendered their convictions void as a matter of law.  *Transfiguracion*, 442 F.3d at 1231 (discussing *Sandoval-Lopez*).  The Government argued that the defendants' § 2255 motions "were a breach of their agreements and that the government could prosecute the defendants on charges dismissed pursuant to the plea bargains."  *Id.*  The Ninth Circuit held that, given that the "plea agreements . . . did not explicitly prohibit the defendants from moving to vacate their convictions rendered void by a change in the substantive law," the defendants' motions to vacate on that ground did not permit the court to cancel the guilty pleas and to allow the Government to prosecute the defendants on the dismissed charges.  *Id.*  Therefore, the plea agreement in *Sandoval-Lopez* remained in effect, precluding the Government "from reinstating the counts that had been dismissed pursuant to the agreement." *Id.*  The *Sandoval-Lopez* Court reasoned:

> The defendants did not attack their plea agreements. . . . Instead, they claimed in their § 2255 motions that, while their plea bargains were knowing, voluntary, and in all other respects proper when made and accepted by the district court, the conduct to which they pled guilty—the only conduct for which they were convicted and sentenced—is now insufficient as a matter of law to support their convictions.  They did not recant their admissions to having committed the acts that formed the basis for the counts of conviction; they simply claimed, correctly, that after *Bailey* those acts were no longer crimes.

122 F.3d at 802 (quoted in *Transfiguracion*, 442 F.3d at 1231).

20

In *Transfiguracion*, the Ninth Circuit concluded that "[s]imilar circumstances exist[ed]" with regard to Transfiguracion and Dao, who "ha[d] not recanted their admissions to the actions alleged in the informations" or "violated the provisions of their agreements precluding appeal or collateral attack on their convictions." *Transfiguracion*, 442 F.3d at 1231.  Observing that "'[a] plea agreement does not waive the right to bring a § 2255 motion unless it does so expressly,'" the Ninth Circuit concluded that Transfiguracion's and Dao's plea agreements, which simply waived the rights to appeal and collaterally attack their convictions, did not prohibit them "from moving to dismiss the importation charges based on the [later appellate] decision [that changed the law]." *Id.*  It stated that it could not change or add to "the express terms" of the plea agreement. *Id.* at 1232.  Thus, "the defendants' actions were permitted under the terms of their contracts with the government." *Id.* at 1231.  Relevantly, the Ninth Circuit noted, *id.* at 1232:

> [I]t was the government as the drafter of the contract[] that failed adequately to protect itself from a subsequent change in the law. We stated in quite plain terms in *Barron* that "[t]he drafter of the plea agreement could have anticipated the contingency that has arisen and included a provision protecting the government's interest in the event that [the] conviction was vacated; that the government did not do so does not justify rescission of the agreement." 172 F.3d at 1161.  Similarly, in *Sandoval-Lopez*, we noted that absent a clause prohibiting the defendants from moving to vacate their convictions, "the prosecution bore the risk that a change in the relevant substantive law would afford the defendants the right to be released." 122 F.3d at 801.

The Ninth Circuit also stated that the Government "is the repeat player in the plea bargaining process," and "[b]ecause all plea agreements are negotiated against the backdrop that the law can change by way of judicial interpretation, the prosecution 'knew or should have known that comparable changes in the law occur from time to time.'" *Transfiguracion*, 442 F.3d at 1232 (quoting *Sandoval-Lopez*, 122 F.3d at 801).  It concluded that "[t]he failure of the United States to specify that it could continue to prosecute the defendants in the event that the importation informations were dismissed due to a development in the substantive law (or for any

other reason) is thus a failure to cover a predictable contingency." *Id.*  Additionally, "[u]nder the cannon of *expression unius est exclusion alterius*, the absence of any provision covering that contingency when others are covered indicates that prosecution for the conspiracy charges if the informations were dismissed was not part of the bargain struck by the parties," even though "the government has apparently devised language designed to guard against a similar result in subsequent cases." *Id.* at 1232 & n.15.

In *Transfiguracion*, the Government argued that dismissal deprived it "of the benefit of its bargain, as it was 'bargaining for a conviction.'" *Id.* at 1235.  The court concluded, to the contrary, that "[o]nce the defendants upheld their end of the agreement, the government did obtain bargained-for consideration," namely, "cooperation to the government in its investigation." *Id.*  Therefore, the Government had to uphold its end of the bargain by not "prosecuting the defendants on the conspiracy charges contained in the indictment." *Id.*  It stated that "considerations of fairness to the government" were not relevant, and that, in any event, "allowing the government to proceed on the conspiracy offenses would be inequitable" because under those circumstances, "the government could, under the [plea] agreements, use the defendants' bargained for cooperation to help convict them of separate crimes." *Id.*  The Ninth Circuit stated that, "[w]ith the defendants' having tendered this cooperation, the law does not permit the government to renege on its deal, as the defendants have 'paid in a coin that the [United States] cannot refund.'" *Id.* at 1236 (citation omitted).  The Ninth Circuit concluded that the Government's "course of action [was] tantamount to a breach," such that "the defendants [were] entitled to one of two available remedies – either rescission of the agreement or specific performance." *Id.*  It stated that, given that "tossing the defendants' plea agreements aside would lead to an inequitable result," as "defendants have . . . given up their right to remain silent" and

"already tendered their best bargaining chip . . . . the only permissible remedy is to order specific performance of the plea agreements – that is, of the government's promise not to prosecute for the conspiracy charges if the defendants fulfill their promise to cooperate." *Id.*

Like Transfiguracion and Dao, Edmundson agreed, *inter alia*, to "fully and truthfully disclose to the government all information with respect to her activities and the activities of others concerning all matters as to which the government may choose to inquire," Sealed Supp. ¶ 1(a); to "testify fully and truthfully before grand juries and at any trial and other court proceeding," *id.* ¶ 1(d); and to "bring to [the U.S. Attorney's] Office's attention all crimes which she has committed," *id.* ¶ 1(e); and she agreed that, if she "fail[ed] in any way to fulfill completely each and every one of her obligations under th[e] agreement, [the U.S. Attorney's] Office will be released from its obligations under the agreement" and "the Defendant shall be subject to prosecution by [the U.S. Attorney's] Office for any federal criminal violation of which [the U.S. Attorney's] Office has knowledge," *id.* ¶ 7.  As in *Transfiguracion*, the Government got its benefit of the bargain in the form of Defendant's cooperation and testimony, and both helped it obtain convictions against her co-conspirators, as she was the first to plea and agree to cooperate.  If the Plea Agreement were cancelled, the Government could use her "bargained for cooperation to help convict [her] of separate crimes."  *See Transfiguracion*, 442 F.3d at 1235. Therefore, specific performance of the Plea Agreement is the appropriate remedy.  *See id.* at 1236.

## Sentencing

As discussed, I cannot constitutionally sentence Edmundson for Count Two based on my earlier ruling that the Supreme Court's recent *Johnson* decision applied to that count, and the

Government has not provided any authority on how I could do so, given that prior ruling. Therefore Count Two is dismissed.

The Plea Agreement otherwise remains in effect. Unlike in *Transfiguracion*, 442 F.3d at 1224–25, 1233, where the defendants only pleaded guilty to the one charge that later was rendered invalid, the plea agreement "forbid the prosecution of the defendants on the [remaining] charges as long as they fully cooperate[d] with the government," and the Ninth Circuit affirmed the dismissal of all charges, here Defendant pleaded guilty to the two charges against her, one of which still stands and for which there is no basis for dismissal. To the extent that Defendant argued that the Government breached the Plea Agreement, Defendant's motion is denied as the Government's motion was filed in good faith and was non-frivolous, even though unsuccessful. And, given that Defendant did not breach the agreement by moving to dismiss Count Two, and mutual mistake of law is not a ground for cancelling the agreement, the Government's Motion to Rescind Plea Agreement and Stay Briefing Schedule is denied.

Edmundson will be sentenced for Count One only. I have scheduled sentencing for August 12, 2016, at 1:00 p.m., and I have set a schedule for revising the pre-sentence report and filing objections, responses, and memoranda. ECF No. 88. The Government will be required to comply with the Plea Agreement as it pertains to the Government's arguments at sentencing.

I emphasize that the Government (and Defendant) "reserve[d] the right to bring to the Court's attention at the time of sentencing . . . *all relevant information* concerning the Defendant's background, character and conduct, *including the conduct that is the subject of the counts of the Indictment that [the U.S. Attorney's] Office has agreed to dismiss at sentencing*." Plea Agr. ¶ 10 (emphasis added). As noted, the Government only charged Defendant with the two counts that are the subject of the Plea Agreement, one of which I have dismissed.

Nonetheless, "all relevant information" includes *all* of Defendant's conduct related to the conspiracy, including the brandishing, regardless of whether Defendant has been charged for it. Thus I may consider this conduct at sentencing, and it could result in an upward variance above the guidelines range, should I determine that such a result is warranted.

### Additional Charges

To determine how to proceed with regard to other criminal violations of which the Government now has knowledge, by virtue of Edmundson's cooperation, *see, e.g.*, Sealed Supp. ¶ 1(e), and could attempt to prosecute, but for which the Government previously did not bring charges, I refer back to the Plea Agreement, which remains in effect, although it is far from a model of clarity.   Under Maryland contract law, the doctrine of *contra proferentem* applies to interpret ambiguities in a contract against the drafter.   *John L. Mattingly Const. Co. v. Hartford Underwriters Ins. Co.*, 999 A.2d 1066, 1078 (Md. 2010).   The Fourth Circuit has applied this principle to plea agreements.   *E.g.*, *United States v. Barefoot*, 754 F.3d 226, 246 (4th Cir.), *cert. denied*, 135 S. Ct. 502 (2014) ("[A]ll ambiguities in the Plea Agreement are to be construed against the government as its drafter."); *United States v. White*, 628 F. App'x 848, 851 (4th Cir. 2015) ("'"[C]onstitutional, supervisory, and private [contract] law concerns' . . . 'require holding the Government to a greater degree of responsibility than the defendant" for any imprecision in a plea agreement, so that ambiguities are construed against the Government.'" (citing *United States v. Harvey,* 791 F.2d 294, 300 (4th Cir. 1986))); *see also United States v. Ratti*, 365 F. Supp. 2d 649, 662 (D. Md. 2005) (discussing immunity agreements, which "are closely analogous to" plea agreements, and stating that "[a]ny ambiguity in the [immunity] agreement must be construed 'strictly against the government in recognition of its superior bargaining power'" (quoting *United States v. Aleman,* 286 F.3d 86, 90 (2d Cir. 2002)).

Notably, Rule 11 allows a plea agreement to include an agreement not to bring other charges or to dismiss certain counts.  *See* Fed. R. Crim. P. 11(c)(1)(A).  This Plea Agreement and Sealed Supplement, however, do not specifically provide that the Government will not bring other charges, but that certainly is the unavoidable implication of several paragraphs.  For example, the Plea Agreement stated that the Court may consider at sentencing "the conduct that is the subject of the counts of the Indictment that [the U.S. Attorney's] Office *has agreed to dismiss at sentencing*," Plea Agr. ¶ 10 (emphasis added).  Likewise, in the Sealed Supplement, the Government agreed to inform the Probation Office and the Court of Defendant's cooperation and "all other information … relevant to sentencing, including the conduct that is the subject of any counts of the Indictment that [the U.S. Attorney's] Office *has agreed to dismiss* at sentencing."  Sealed Supp. ¶ 3 (emphasis added).  And, the Sealed Supplement stated that, *if Defendant breached it*, she would "be subject to prosecution . . . for any federal criminal violation of which [the U.S. Attorney's] Office has knowledge, including . . . the offenses charged in the other counts of the Indictment that *would otherwise have been dismissed at sentencing*."  *Id.* ¶ 7 (emphasis added).

Applying the doctrine of *contra proferentem*, these paragraphs provide that sentencing on Counts One and Two, which now shall be on Count One alone, is to be the end of the Government's prosecution of Edmundson with regard to this conspiracy.  They also provide that the Government waived its right to proceed on any other charges, unless Edmundson breached the Plea Agreement or Sealed Supplement (which she did not).  Thus, the Plea Agreement obligates the Government not to bring additional charges against Edmundson with regard to the conspiracy, given that I do not find that Edmundson has violated any clause of the Plea Agreement or Sealed Supplement.

**Conclusion**

In sum, as stated in my June 15, 2016 Paperless Order, ECF No. 83, Defendant's Supplemental Motion to Dismiss Count Two, ECF No. 66, IS GRANTED, and Count Two is dismissed.  Defendant's previous motions to dismiss, ECF No. 38 and 39, have been denied as moot in light of this ruling.  ECF Nos. 85, 86.   The Government's Motion to Rescind [Cancel] Plea Agreement and Stay Briefing Schedule, ECF No. 70, IS DENIED.   With Count Two dismissed, the Plea Agreement otherwise remains in effect, and Edmundson will be sentenced for Count One only.  I have scheduled sentencing for August 12, 2016, at 1:00 p.m., and pre-sentencing filings and memoranda will be submitted in accordance with my June 16, 2016 Paperless Order, ECF No.  ECF No. 88.  The Government will be required to comply with the Plea Agreement as it pertains to the Government's arguments at sentencing and the Government's waiver of its right to bring additional charges against Defendant.  Finally, at sentencing, the parties may inform the Court of all of Defendant's relevant conduct, including that related to the dismissed and uncharged conduct, and the Court may consider all relevant conduct of Defendant in determining a sentence.

Date: July 5, 2016                                             _____/S/_____
                                                              Paul W. Grimm
                                                              United States District Judge